UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY MCCOY AND
NICHOLAS BOLLEA, as
Personal Representatives
of the ESTATE OF TERRY
G. BOLLEA,

      Plaintiffs,

v.                                                 Case No. 8:25-cv-2334-TPB-AAS

BUBBA THE LOVE SPONGE
CLEM,

      Defendant.
_____/

**ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART PLAINTIFFS' "EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION"**

This matter is before the Court on Plaintiffs' "Emergency Motion for Temporary Restraining Order and Preliminary Injunction," filed on September 2, 2025. (Docs. 2; 6-2). After reviewing the motion, court file, and the record, the Court finds as follows:

**Background**

According to the allegations of the complaint (Docs. 1; 6-1), Plaintiffs Terry McCoy and Nicholas Bollea are co-personal representatives of the Estate of Terry G. Bollea (the "Estate"). Bollea, a former wrestler professionally known as "Hulk Hogan," died in July 2025. In 2007, Defendant Bubba the Love Sponge Clem, a radio personality and former friend of Bollea, surreptitiously filmed Bollea engaged in "consensual private conduct" and transferred the video (the "sex tape") to a DVD.

Gawker Media later obtained a copy of the sex tape and posted an edited version of it online. Bollea sued Gawker for publication of the sex tape and sued Clem on claims relating to the sex tape's creation and dissemination. Bollea eventually settled with Clem. The terms of the settlement prohibit Clem from referring to Bollea except in a positive way or in relation to a newsworthy event, excluding the scandal relating to the sex tape. The agreement also provides Clem would maintain the confidentiality of all information relating to Bollea and his family including personal matters. Under the agreement, Clem transferred his rights to Bollea, including copyrights, with respect to any depictions of Bollea, including the sex tape. The parties agreed to keep the settlement agreement confidential. Bollea registered the sex tape with the United States Copyright Office.

Plaintiffs allege that in June 2025, Clem began violating the settlement agreement by talking about Bollea's personal life and financial issues, among other things. Bollea passed away on July 24, 2025, and his rights under the settlement agreement and rights to the sex tape passed to the Estate. Since then, Clem has continued to speak about topics relating to Bollea, including the sex tape, in violation of the settlement agreement.

Clem has also been involved in the creation of a documentary that Plaintiffs allege will prominently feature excerpts from the sex tape as well as personal information about Bollea. Clem began discussing the forthcoming documentary on his show the day after Bollea's death. He appeared on "Piers Morgan Uncensored" on July 28, 2025, and promoted the documentary, and did so again on "The Bubba

Army Podcast, Bubba Uncensored" on August 18, 2025. The documentary, set to be released to the public on September 12, 2025, will be available through various media outlets such as Amazon Prime. The documentary will be shown at a private event on September 5, 2025, with an anticipated audience of 350-400 viewers.

Plaintiffs have filed a verified complaint seeking injunctive relief and damages under theories of Copyright Infringement (Count I), Federal Trademark Infringement (Counts II and III), and Breach of Contract (Count IV). Plaintiffs have also filed a motion for temporary restraining order and preliminary injunction to prevent Clem, among other things, from promoting or publishing the documentary and other related content, discussing the sex tape or the circumstances surrounding it, "making any video content relating to Bollea," making disparaging comments about Bollea, and "making other comments or taking any other actions that violate the terms of the Settlement Agreement."

The focus of Plaintiffs' TRO request is injunctive enforcement of the parties' settlement agreement. Although the complaint includes claims brought under the federal copyright and trademark acts, thus providing a basis for federal question jurisdiction, the request for a TRO does not seek to enjoin any copyright or trademark violations apart from the sex tape, which Plaintiffs assert is subject to copyright.

## **Legal Standard**

A district court is authorized to issue a temporary restraining order without notice to the adverse party only in limited emergency circumstances. *See* Fed. R.

Civ. P. 65(b); M.D. Fla. Local Rule 6.01.  The movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).  In addition, the motion must be supported by allegations of specific facts shown in the verified complaint or accompanying affidavits, not only that the moving party is threatened with irreparable injury, but that such injury is so imminent that notice and a hearing on the application for preliminary injunction is impractical.  *See Martinez Serna v. Bailey Farms South, LLC*, No. 2:21-cv-237-SPC-MRM, 2021 WL 1060176, at *1-2 (M.D. Fla. Mar. 19, 2021).  "[A] [temporary restraining order] is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001).

## Analysis

The Court is not convinced that at this point that the Estate is threatened with immediate and irreparable harm from violations of the settlement agreement sufficient to justify granting injunctive relief without notice to the other side.  For one thing, Clem has apparently been violating the terms of the settlement agreement by publicly discussing Bollea since at least June 2025, a period of more than three months.  Yet, Plaintiffs waited until three days before the September 5,

2025, limited premiere of the documentary to file this action and its motion for a TRO.  Moreover, the certification of counsel that "there is concern" that if Clem were given notice of the motion, he would proceed to release the documentary before the Court could enter an order appears speculative and insufficient to support entering an order without notice.  This delay militates against finding that situation is an emergency warranting entering an order without notice.  Notably, Plaintiffs have not yet filed the settlement agreement.

To the extent an emergency exists, it would relate to publication of portions of the sex tape itself as part of the documentary.  Plaintiffs assert the tape is protected by copyright, and the Copyright Act expressly provides for injunctive relief to prevent infringement.  *See* 17 U.S.C. § 502.  In this case, Clem is alleged to have improperly created the sex tape without Bollea's consent and agreed as part of a settlement to transfer all rights to the sex tape to Bollea.  According to Plaintiffs, Clem now plans to publish the copyrighted material for commercial gain.  The damage to the Estate arising from copyright violations may be difficult to quantify and to remedy with an award of money damages.

Under these circumstances, the Court finds the requirements for a temporary restraining order, including likelihood of success, irreparable harm, balancing of harms, and the public interest are met with respect to actual publication of the allegedly copyrighted material.  However, in view of the circumstances and the potential for financial harm to Clem if the temporary restraining order is

determined to have been improperly entered, the Court will require Plaintiffs to post a bond in the amount of $500,000.

Although Plaintiffs are not entitled to a temporary restraining order without notice as to matters other than actual publication of the sex tape, the Court will consider the additional relief Plaintiffs seek as grounds for a preliminary injunction after Clem has been served with the complaint and the motion and given an opportunity to respond.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Plaintiffs' "Emergency Motion for Temporary Restraining Order and Preliminary Injunction" (Doc. 2) is hereby **GRANTED** to the extent that Plaintiffs seek a temporary restraining order prohibiting Defendant from publishing the actual sex tape or excerpts of the sex tape as part of the forthcoming documentary. To the extent the motion seeks a temporary restraining order as to other conduct, it is **DENIED.**

(2) Plaintiffs are directed to file a revised version of their "[Proposed] Temporary Restraining Order" (Doc. 6-2) modified to be consistent with this Order and granting only the relief reflected in this Order. They are further directed to send a word document version through e-mail to Chambers.

(3) Immediately upon entry of the temporary restraining order, Plaintiffs are directed to serve on Defendant a copy of the summons, the complaint, the "Emergency Motion for Temporary Restraining Order," a copy of any affidavit

and other paper submitted in support of the motion, a copy of this Order, and a copy of the temporary restraining order. *See* Local Rules 6.01; 6.02.

(4) Plaintiffs are directed to file proof of service promptly after service is effected.

(5) Within seven (7) calendar days of entry of this Order, Plaintiffs shall deposit with the Court five hundred thousand dollars ($500,000), either cash or surety bond, as security to pay damages to any persons as may be entitled to recover as a result of a wrongful restraint hereunder.

(6) Defendant is directed to file his response to Plaintiffs' motion within 7 days after service of the complaint, motion, and other papers.

(7) Following service and an opportunity to respond, the Court will expeditiously set a hearing to address the request for preliminary injunction, if warranted.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 4th day of September, 2025.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE